**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| EDWARD CHAPMAN, | CASE NO. 4:25-cv-01379 |
| Petitioner, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN IAN HEALY, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Petitioner Edward Chapman ("Petitioner" or "Mr. Chapman") filed this habeas corpus action under 28 U.S.C. § 2241 on June 23, 2025, asserting that the Bureau of Prisons ("BOP") is improperly denying him First Step Act ("FSA") time credits and improperly denying or delaying his placement in a Residential Reentry Center ("RRC") or home confinement ("HC") under the Second Chance Act ("SCA").[1]  (ECF Doc. 1 ("Petition").)  Respondent filed a motion to dismiss the Petition or, in the alternative, for summary judgment, arguing that the Petition is not ripe, that Mr. Chapman did not exhaust his administrative remedies, and that his claims lack merit.  (ECF Doc. 8 ("Motion").)  Mr. Chapman filed a reply to Respondent's Motion.  (ECF Doc. 9.)

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth below, the undersigned recommends that the Court **DENY** the motion to dismiss pursuant to Rule 12(b)(1), **GRANT** the motion to dismiss pursuant to Rule 12(b)(6) (ECF Doc. 8), and **DISMISS** the Petition (ECF Doc. 1) without prejudice.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Chapman's Petition was docketed on June 30, 2025 (ECF Doc. 1) and placed in the prison mailing system on June 23, 2025 (*id*. at p. 18).

1

## I.     Background

### A.     Petitioner's Conviction and Sentence

Mr. Chapman was convicted of Conspiracy to Distribute and Possess with Intent to Distribute 100 Grams or More of Heroin, 400 Grams or More of Fentanyl, Cocaine, Cocaine Base, Oxycodone, and Marijuana on March 10, 2022, in the United States District Court for the District of Massachusetts.  (ECF Doc. 1, p. 1; ECF Doc. 8-1, pp. 1-2, ¶ 3 ("Jensen Aff."); ECF Doc. 8-2, p. 2.)  He was sentenced to a prison term of 120 months.  (Jensen Aff., p. 2, ¶ 3; ECF Doc. 8-2, p. 2.)  He is incarcerated at Federal Correctional Institution Elkton.  (ECF Doc. 1, p. 1; Jensen Aff., p. 2, ¶ 5.)  Mr. Chapman's projected release date, assuming he receives available good conduct time and other credit, is October 24, 2027.  (Jensen Aff., p. 2, ¶ 3.)

### B.     Petitioner's Habeas Petition

In the Petition, Mr. Chapman challenges the manner in which his sentence is being carried out, calculated, or credited by the Bureau of Prisons ("BOP").  (ECF Doc. 1, p. 2.)  Under the heading "Decision or Action You Are Challenging," Mr. Chapman states that he is "being categorically denied programming days as the result of being in transit, and awaiting to be transferred to [his] designated BOP facility."  (*Id.*)  He identifies three grounds for relief, all of which are labeled Ground One.  (ECF Doc. 1, pp. 9-17.)  The three grounds are set forth below and relabeled Grounds One, Two, and Three.

> **GROUND ONE**:  I am being improperly Denied an Additional 5-days of First Step Act Time Credits, per every 30 days of programming, contrary to the explicit language in the First Step Act requiring its application.
>
> **Supporting facts**:  My First LOW PATTERN assessment was on 5-1-2024 (Asses. #6) and my Secondary LOW PATTERN assessment was on 9-5-2024 (Asses. #7). As such, by Federal Law (18 USC 3632(D)(4)(A)(ii)'s explicit language) the BOP was required to grant an additional 5-days of FTCs per every 30 days of programming.  "A prisoner determined by the [BOP] to be at a [] low risk of

recidivating, who, over 2 consecutive assessments, has not increased their risk [], <u>SHALL</u> earn an additional 5 days . . . for every 30 days . . .”

(ECF Doc. 1, pp. 9-10 (alterations, emphasis, and brackets in original).)

> **GROUND TWO**:  I was improperly denied RRC/HC placement, or improperly delayed as a result of staff failure to abide policy, central office directives, and considerations of law.
>
> **Supporting facts**:  Improperly denied as I have no warrants or detainers.

(*Id*. at pp. 12-13.)

> **GROUND THREE**:  I am improperly being categorically denied First Step Act Programming Days for the time period that I was in transit or awaiting transfer to my BOP designated facility.
>
> **Supporting facts**: I was sentenced on March 10, 2022 (Not 5-05-2022). Additionally, I was in transit (per FSA FTC calculation page) between 9-19-2023 and 10-11-23, from 8-15-24 to 8-26-24, and lastly from 9-25-2024 to 1-12-25.  CFR 523.41(c)(4)(i-iv) includes additional exclusions not found in the FSA, and cannot be used to categorically deny programming days.  (Patel v. Barron, 2023 WL 6311281, at 5) (Jobin v. Warden, FCI-Mendota, 2024 WL 1367902, at 4) (Umejesi v. Warden, FCI-Berlin, 2023 WE 4101455).

(*Id*. at pp. 15-16.)

Mr. Chapman requests that the Court: waive any failure to administratively exhaust his claims; require the BOP to apply the additional 5-days of FTC from the original eligibility date; order expeditious review and reconsideration of his placement in RRC/HC by a neutral employee; require that the BOP grant him programming days starting from his sentencing date of March 10, 2022, not May 5, 2022; and require that the BOP grant him programming days for the periods of time he was in transit.  (*Id*. at pp. 11, 14, 17.)

## C.      Respondent's Motion

Respondent filed a response in opposition and motion to dismiss the Petition under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim; alternately, he seeks summary judgment in his favor under Fed. R. Civ. P.

3

56.  (ECF Doc. 8.)  Under Fed. R. Civ. P. 12(b)(1), Respondent argues Mr. Chapman's claims for application of Federal Time Credit ("FTC") and placement in a RRC are not ripe for review because the BOP has not yet made an assessment and recommendation as to his placement under the SCA, which deprives the Court of subject matter jurisdiction.  (*Id*. at pp. 10-12.)  Under Fed. R. Civ. P. 12(b)(6), Respondent argues the Petition should be dismissed because Mr. Chapman failed to exhaust his administrative remedies and failed to present plausible claims for relief.  (*Id*. at pp. 12-14.)  Finally, Respondent argues that Mr. Chapman was not eligible to earn FTCs during non-qualifying periods, and that his claim for credits during those periods should be dismissed under Rule 12(b)(6) or denied as a matter of law under Rule 56.  (*Id*. at pp. 14-16.)

## II.      Standard of Review

The Rules Governing Section 2254 Cases in the United States District Courts "may be applied to § 2241 petitions."  *Hargrove v. Healy*, No. 4:23-CV-1857, 2024 WL 3992261, at *2 (N.D. Ohio Aug. 28, 2024) (citing Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts).  Further, the "Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or [those] [governing] rules, may be applied to a proceeding under these rules."  *See* Rules Governing § 2254 Cases, Rule 12, 28 U.S.C.A. foll. § 2254.  Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts also contemplates the filing of a motion in response to a petition for writ of habeas corpus under 28 U.S.C. § 2254.  *See* Rules Governing § 2254 Cases, Rule 4, 28 U.S.C.A. foll. § 2254.  Thus, Respondent's motion under Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), and/or Fed. R. Civ. P. 56 is properly before this Court for review.[2]

---

[2] Courts must consider 12(b)(1) motions before 12(b)(6) motions because a 12(b)(6) challenge is moot if the court lacks subject matter jurisdiction.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

### III.    Law and Analysis

**A.    Dismissal of the Petition Pursuant to Rule 12(b)(1) is Not Supported**

Respondent first argues that the Petition must be dismissed under Fed. R. Civ. P. 12(b)(1) because the "Court lacks subject-matter jurisdiction over Petitioner's claims for application of FTCs and placement in an RRC," and the "claims are not ripe for review."  (ECF Doc. 8, p. 10.)

**1.    Legal Standard for Rule 12(b)(1) Dismissal Based on Lack of Ripeness**

"Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (italics removed); *see Cartwright*, 751 F.3d at 760.  Challenges to subject-matter jurisdiction "'come in two varieties: a facial attack or a factual attack.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (citation omitted).  In cases such as this, where a factual attack has been raised, the court may "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction[]" and has the "discretion to allow" additional evidence, including affidavits and documents "to resolve disputed jurisdictional facts." *Carrier Corp.*, 673 F.3d at 440 (internal citations and quotations omitted).

To invoke the jurisdiction of the federal courts under Article III of the United States Constitution, there must be "an actual case or controversy."  *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974).  If a claim is filed too early, it is not ripe for the judicial process.  *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008).  "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal citation and

quotations omitted).  "The ripeness doctrine serves to 'avoid[ ] ... premature adjudication' of legal questions and to prevent courts from 'entangling themselves in abstract' debates that may turn out differently in different settings."  *Warshak*, 532 F.3d at 525 (citing and quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807) (omission and first alteration in original).

    **2.**        **The Evidence Does Not Support Dismissal of the Petition as Unripe**

In his Petition, Mr. Chapman asserts three grounds for relief.  (ECF Doc. 1, pp. 9-10, 12-13, 15-16.)  First, he argues he is being denied five additional days of FSA time credits per every thirty days of programming, contrary to the explicit language of the FSA.  (*Id*. at pp. 9-10.)  Second, he argues that his placement in an RRC or HC has been improperly denied or delayed due to staff's failure to abide by policy, central office directives, and the law.  (*Id*. at pp. 12-13.)  Finally, he argues the BOP is improperly denying him FSA programming days for time periods when he was in transit or awaiting transfer to a BOP designated facility.  (*Id*. at pp. 15-16.)

Without individually addressing the three claims articulated in the Petition, Respondent argues the Petition was prematurely filed—and this Court thus lacks subject matter jurisdiction—because the BOP has "not yet made an assessment and recommendation on placement pursuant to SCA."  (ECF Doc. 8, pp. 10-12.)  In support, Respondent explains that the "BOP reviews inmates for placement between 17-19 months from their projected release date" to satisfy the requirements of 18 U.S.C. § 3624(c)(1).  (ECF Doc. 8, p. 11.)  "After considering all relevant factors in accordance with the SCA," Respondent explains that "the Unit Team will [then] make a recommendation on Petitioner's placement."  (*Id*.)  In this case, Respondent explains that "[t]he earliest that BOP w[ould] begin Petitioner's assessment for recommendation for placement is 17-19 months from his projected release date" of October 24, 2027.[3]  (ECF Doc. 8, p. 12.)

---

[3] Considering Respondent's projections, the BOP may have performed the described assessment after the present motion was filed.  If the projected release date remains October 24, 2027, Respondent's projections suggest the

While Respondent generally asserts that the claims in the Petition are not yet ripe because the SCA Assessment is not complete, he does not individually address each of the three claims in the Petition, nor does he clearly explain why the assessment is a necessary precursor to each claim's ripeness.  The language of the claims does not suggest that they are contingent on the results of a SCA Assessment.  Further, Respondent has not clearly identified legal authority to support a finding that a prisoner may not challenge a notice or decision regarding programming days or eligibility for placement in RRC/HC until a specific formal SCA Assessment has been completed.  Given the lack of clear argument or authority to support a finding that Petitioner may not assert his three claims until an SCA assessment is complete, the undersigned concludes that Respondent's motion to dismiss for lack of subject matter jurisdiction lacks merit.

Accordingly, the undersigned recommends that the Court **DENY** Respondent's motion to dismiss the Petition pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**B.** **The Petition Should Be Dismissed for Failure to Exhaust Administrative Remedies**

Respondent argues next that the Petition should be dismissed under Fed. R. Civ. P. 12(b)(6) because Mr. Chapman failed to properly exhaust his administrative remedies.  (ECF Doc. 8, pp. 3-7, 12-14.)  Rather than arguing that he exhausted his remedies, Petitioner asks the Court to waive the exhaustion requirement.  (ECF Doc. 1, pp. 11, 17; ECF Doc. 9, pp. 1-2.)

**1.** **Legal Standard for Rule 12(b)(6) Dismissal**

Under Rule 12(b)(6), the Court may dismiss a claim when a party fails to plead facts on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

assessment may have begun as early as March 2026.  The undersigned has not asked Respondent to supplement the record regarding the status of the assessment because, as discussed herein, the record does not clearly establish that the ripeness of the three claims in the Petition is dependent on the completion of the described assessment.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (citation omitted). However, while "we must accept all well-pleaded factual allegations in the complaint as true, we need not 'accept as true a legal conclusion couched as a factual allegation.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

A court presented with a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009). The undersigned concludes that the attachments to Respondent's Motion refer to matters that are central to the claims contained in Mr. Chapman's Petition. Accordingly, the undersigned finds it appropriate to consider Respondent's Motion under Rule 12(b)(6) rather than treating it as a motion for summary judgment under Rule 56.[4]

### 2. Legal Standard for Exhaustion of Administrative Remedies

Before filing a § 2241 Petition, a petitioner must exhaust his administrative remedies. *See Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013) (citing *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)); *see also Jackson v. Fed. Bureau of Prisons*, No. 1:07

---

[4] In evaluating the motion, the undersigned has considered exhibits submitted by Mr. Chapman, a declaration from BOP attorney Robert Jensen, and attachments thereto, which include Sentry records relating to administrative remedy requests filed by Mr. Chapman. (Jensen Aff., pp. 2-4, ¶¶ 6-9; ECF Doc. 8-4.) Mr. Jensen avers that he has access to and is familiar with records maintained in the BOP's computerized database, Sentry. (Jensen Aff., p. 1, ¶ 1.) "Sentry, . . . is designed to track information about federal prisoners, including but not limited to inmate data, admission/release dates and the status of administrative remedy requests filed by federal prisoners." (*Id.*)

CV 1622, 2007 WL 2231036, at *2 (N.D. Ohio July 31, 2007) ("Prisoners who seek relief under 28 U.S.C. § 2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court."). When a petitioner fails to exhaust administrative remedies, a procedural default occurs. *See Engle v. United States*, 26 F. App'x 394, 396 (6th Cir. 2001).

"[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal citation and quotations omitted) (emphasis removed). "Exhaustion of administrative remedies serves two main purposes." *Id.* at 89.

> First, exhaustion protects "administrative agency authority." Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures."
>
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."

*Id.* (internal citations omitted) (bracket in original).

Where a petitioner has procedurally defaulted claims due to a failure to exhaust administrative remedies, the default may be excused if a petitioner "show[s] cause and prejudice for the failure to exhaust."[5] *Engle*, 26 F. App'x at 396. "[A]n intentional decision not to exhaust procedural remedies generally does not constitute cause, [but] official interference making compliance impracticable will." *Id.* (citing *Amadeo v. Zant,* 486 U.S. 214, 221-22 (1988)).

---

[5] Administrative exhaustion may be excused in § 2241 cases because it is not jurisdictional. *See Purley v. Toledo Fed. Ct.*, No. 3:24-CV-01211-JRK, 2025 WL 240737, at *5 (N.D. Ohio Jan. 17, 2025) (explaining "exhaustion of administrative remedies is not a jurisdictional requirement" in a § 2241 case), *report and recommendation adopted,* No. 3:24 CV 1211, 2025 WL 581090 (N.D. Ohio Feb. 21, 2025); *see also Jackson*, 2007 WL 2231036, at *2.

9

Administrative exhaustion may also be excused "when there has been a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider that the resort to administrative remedies is considered futile[,]" *Jackson*, 2007 WL 2231036, at *3 (internal quotation and citation omitted), or where the issue raised is one of statutory construction, *see Goodman v. Sage*, No. 4:22-CV-00981, 2022 WL 18028148, at *3 (M.D. Pa. Dec. 30, 2022).

The BOP has an Administrative Remedy Program, the purpose of which "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).  There are four steps.  *See* 28 C.F.R. §§ 542.13-542.15.  Except for exceptions set forth in 28 C.F.R. § 542.13(b), an inmate must first present the issue informally to prison staff.  28 C.F.R. § 542.13(a).  Second, if the inmate is dissatisfied with the informal resolution and wants to pursue the issue, the inmate must then submit a formal Administrative Remedy Request on the appropriate BP–9 form to the institution where he is confined.  28 C.F.R. §§ 542.14(a), (c).  "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP–9), is 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a).  Third, if the inmate is not satisfied with the Warden's response to the BP–9  submission, he may submit an Appeal on the appropriate form, a BP–10, to the Regional Director within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  Finally, if the inmate is dissatisfied with the Regional Director's response, he may submit an Appeal on the appropriate form, a BP–11, to the General Counsel within 30 calendar days from the date the Regional Director signed the response.  28 C.F.R. § 542.15(a).  "Appeal to the General Counsel is the final administrative appeal."  28 C.F.R. § 542.15(a).

There are a few exceptions to the steps outlined above.  28 C.F.R. §§ 542.13(a), (b).  "An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution."  28 C.F.R. § 542.13(b)  And if the matter pertains to a "sensitive issue," the inmate may bypass the first two steps and "submit the Request directly to the appropriate Regional Director."  28 C.F.R. §§ 542.13(b), 542.14(d)(1).  The "sensitive issues" exception applies "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution[.]"  28 C.F.R. § 542.14(d)(1).  "If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted."  *Id.*  "Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request."  *Id.*  "The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden . . . [and] [t]he Warden shall allow a reasonable extension of time for such a resubmission."  *Id.*

### 3. Petitioner Did Not Exhaust His Administrative Remedies and Has Failed to Show "Cause" to Excuse the Resulting Procedural Default

Respondent argues that the Petition should be dismissed because Mr. Chapman failed to properly exhaust his administrative remedies.  (ECF Doc. 8, pp. 3-7, 12-14.)  Although Mr. Chapman "filed BOP administrative remedy requests on five separate occasions," Respondent asserts that he consistently "failed to correct procedural errors, even after being instructed what to do."  (ECF Doc. 8, p. 12; *see also id*. at pp. 3-7.)  Rather than arguing that he appropriately exhausted his administrative remedies, Petitioner instead asks this Court to waive the exhaustion requirement.  (ECF Doc. 1, pp. 11, 17; ECF Doc. 9, pp. 1-2.)

11

### i.  Petitioner Failed to Exhaust his Administrative Remedies

Respondent asserts that Mr. Chapman failed to exhaust his administrative remedies because he ignored written instructions on how to remedy his rejected requests for relief, electing to seek higher levels of review instead of following directions to fix and/or complete his lower-level requests.  (ECF Doc. 8, pp. 3-7, 13.)  A review of the records bears out this assertion.

Mr. Chapman has submitted evidence suggesting he attempted to engage in the first level of administrative review, addressing his disputes informally with prison staff.  *See* 28 C.F.R. § 542.13(a).  In an April 22, 2025 email, Mr. Chapman reported that he had handed three Request for Administrative Remedy Informal Resolution Forms (BP–8s) to Mr. Zackasee, relating to: denial of extra five days of earned time credit; SCA, FSA, and a delay in RCC/HC paperwork; and the denial of programming days.  (ECF Doc. 9-2, p. 1; *see also* ECF Doc. 1-2 (three unsigned BP–8s dated April 22, 2025).)  He wrote that he was sending the email to "serve[] as [his] receipt of when handed over to prison authorities" because he was "having difficulty with timely responses from staff[.]"  (ECF Doc. 9-2, p. 1)  About two weeks later, in an email dated May 5, 2025, Mr. Chapman informed Warden Healy "of the delay of the 3 BP–8s that [he] . . . submitted . . . on April 22, 2025," again describing the topics in the BP–8s.  (*Id*. at p. 2.)  He indicated he had "not received any response on the[] issues" and had "experienced delays or mishandling of [his] BP–8s" in the past, and requested Warden Healy's "assistance for a fast resolution of [the] issues so . . . [he could] proceed to the next level[.]"  (*Id*.)

Four days later, on May 9, 2025, Mr. Chapman advanced his disputes to the next level of review by filing three written Administrative Remedy Requests (BP-9s) with the institution where he was confined, addressing the same issues.  (ECF Doc. 1-3, pp. 6, 13, 19); *see* 28 C.F.R. § 542.14(a), (c).  Mr. Chapman wrote that he filed the BP–9s at "the specific request of the

Warden and Associate Warden per [their] discussion on Friday May 9, at approximately 9:30 am, pertaining to the undue delay in processing my BP–8 (Informal Resolution) requests."  (*Id*.)

However, on May 12, 2025, the evidence indicates that the BP-9 requests were rejected by the Administrative Remedy Coordinator at FCI Elkton for the following stated reasons:

> REJECT REASON 1:  YOU MAY RESUBMIT YOUR REQUEST IN PROPER FORM WITHIN 5 DAYS OF THE DATE OF THIS REJECTION NOTICE.
>
> REJECT REASON 2:  YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

(ECF Doc. 1-4, pp. 1, 5; ECF Doc. 8-4, pp. 2-3.)  Despite these instructions, Mr. Chapman has neither argued nor provided evidence to show that he resubmitted his BP-9 requests "in proper form" within five days of the relevant notice, or that he submitted or attempted to submit additional "evidence of [his] attempt at informal resolution" as contemplated in the notice.

Instead of submitting corrected BP-9 requests and/or additional evidence to substantiate his attempts at informal resolution to FCI Elkton as instructed, the evidentiary record indicates that Mr. Chapman advanced his requests for relief to the next level of administrative review by filing three Regional Administrative Remedy Appeal (BP-10) forms with the Regional Director on May 14, 2025.  (ECF Doc. 1-3, pp. 4-5, 11-12, 17-18); *see* 28 C.F.R. § 542.15(a).  Mr. Chapman's regional appeals were received on May 20, 2025, and rejected on May 21, 2025. (ECF Doc. 1-4, pp. 2-4; ECF Doc. 8-4, pp. 3-4.)  The rejection notices from the Northeast Regional Office relating to the regional appeals as to FSA eligibility and FSA time credits provided the following reasons for the rejection of the appeals:

> REJECT REASON 1: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL AT THIS LEVEL.
>
> REJECT REASON 2:  SEE REMARKS.

REMARKS: YOU WERE ADVISED BY THE WARDEN ON THE 5-12-25 NOTICE TO CORRECT AND RESUBMIT YOUR BP9.  IT IS UNCLEAR WHY YOU DID NOT FOLLOW THE INSTRUCTIONS YOU WERE GIVEN.

(ECF Doc. 1-4, pp. 2-3; ECF Doc. 8-4, p. 4.)  The rejection notice relating to Mr. Chapman's regional appeal as to RRC referrals and FSA Time Credits provided the following reasons for rejecting his appeal:

REJECT REASON 1: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL AT THIS LEVEL.

REJECT REASON 2:  SEE REMARKS.

REMARKS: YOU MUST MAKE CORRECTIONS TO THE BP-9 AND RESUBMIT FOR WARDEN'S RESPONSE. IF THE BP-8 WAS SUBMITTED, YOU SHOULD HAVE DATE OF RECEIPT STAMP FROM INSTITUTION.

(ECF Doc. 1-4, p. 4; ECF Doc. 8-4, p. 3.)  Despite these written instructions, Mr. Chapman has neither argued nor provided evidence to show he corrected and resubmitted his BP-9 requests or that he sought, obtained, or submitted copies of his BP-8s with a "date of receipt stamp."

Instead of obtaining copies of his BP-8 forms with a date of receipt stamp and/or correcting and resubmitting his BP-9 forms as instructed, the evidence indicates Mr. Chapman again advanced his requests for relief to the next level of administrative review by filing three Central Office Administrative Remedy Appeal (BP-11) forms with the Central Office, appealing the rejection of his BP–10s.  (ECF Doc. 1-3, pp. 2-3, 9-10, 15-16; ECF Doc. 1-4, pp. 2-4; ECF Doc. 8-4, pp. 5-6); *see* 28 C.F.R. § 542.15(a).  Mr. Chapman argued in the BP-11 relating to RRC referrals that the BP-8 forms he had submitted were "never processed or responded to," further explaining that he was attaching (to the BP-11) copies of those BP-8 forms and the emails he attached to his BP-9s "in attempt to demonstrate attempts to remedy, and staff failure to respond."  (*See* ECF Doc. 1-3, p. 3.)  In the other BP-11s, he argued that his BP-10s were improperly rejected because it was impossible to obtain documents that were "not available" due

14

to "[s]taff destruction and failure to process my BP-8s," and further asserted that "emails to document attempts were submitted in BP-9, and BP-10."  (ECF Doc. 1-3, pp. 9, 15.)

In addition to his three BP–11 appeals, Mr. Chapman also filed a "Sensitive" BP–11 appeal asserting that staff's failure to process his BP–8s had effectively made the administrative process unavailable.  (ECF Doc. 1-3, pp. 1, 8); *see* 28 C.F.R. §§ 542.13(b), 542.14(d)(1).  He argued that it was his "belief that Staff [we]re purposefully hindering [his] filings to keep [him] incarcerated longer than necessary," and he felt it was "a sensitive issue to prevent further retaliatory issues."  (ECF Doc. 1-3, pp. 1, 8.)  He requested that the Central Office accept all his BP–11s and address and correct the failure to timely process his BP–8s.  (*Id*.)

Mr. Chapman's Central Office appeals and his Sensitive BP–11 appeal were received on June 12, 2025, and rejected on June 24 and 25, 2025.  (ECF Doc. 8-4, pp. 5-6.)  The rejection notice relating to Mr. Chapman's appeal as to FSA time credits included the following remarks:

> CORRECT ERRORS IDENTIFIED BY THE INSTITUTION AND RESUBMIT BP-9 FOR WARDEN REVIEW AND RESPONSE.

(*Id*. at p. 5.)  The rejection notice relating to Mr. Chapman's appeal as to RRC placement included the following remarks:

> CORRECT ISSUES IDENTIFIED BY THE INSTITUTION, AND RESUBMIT AGAIN FOR AN INFORMAL RESOLUTION. YOU MUST FOLLOW PREVIOUS INSTRUCTIONS.

(*Id*. at p. 6.)  The rejection notice relating to Mr. Chapman's appeal as to FSA eligibility included the following remarks:

> YOU WERE ADVISED BY THE WARDEN ON THE 5/12/25 NOTICE TO CORRECT AND RESUBMIT YOU BP9. IT IS UNCLEAR WHY YOU DID NOT FOLLOW THE INSTRUCTIONS YOU WERE GIVEN.

(*Id*.)  Finally, the rejection notice for Mr. Chapman's Sensitive request, alleging staff misconduct and failure to process administrative remedy requests, included the following remarks:

15

YOU MUST FILE YOUR REQUEST THROUGH YOUR INSTITUTION 1ST, FOR THE WARDEN'S REVIEW AND RESPONSE. YOU MUST FOLLOW INSTRUCTIONS WHEN FILLING REQUESTS.

(*Id*. at p. 5.) Despite these written instructions, Mr. Chapman has neither argued nor provided evidence to show that he corrected and resubmitted his BP-9 requests as instructed or that he resubmitted any of the disputes for an informal resolution at the BP-8 level.

Based on this history, Respondent argues that Mr. Chapman did not properly exhaust his administrative remedies because he "refus[ed] to follow BOP administrative remedy procedures," and instead submitted improper remedy requests to the regional and central offices, including a "sensitive request," to circumvent the administrative process. (ECF Doc. 8, p. 13.)

The undersigned agrees that the evidence indicates Mr. Chapman did not exhaust his administrative remedies as required by governing regulations. Even setting aside the question of whether he complied with the first step of the administrative process—seeking informal resolution pursuant to 28 C.F.R. § 542.13(b)—the record clearly reflects that he did not follow the instructions that were repeated to him at every other step of the process to: (1) complete the BP-8 informal resolution process and/or provide evidence to the institution of his attempts at informal resolution; and (2) resubmit corrected BP-9 forms to the institution. (*See* ECF Doc. 1-4. pp. 1-5; ECF Doc. 8-4, pp. 2-6.) While he may have provided further evidence or arguments relevant to his initial attempts at informal resolution following the rejection of his BP-9 appeals, he did so only via higher level appeals to the Regional Director and Central Office. Despite clear, repeated instructions to submit further information, evidence, and/or corrected BP-9 forms to FCI Elkton instead, there is no evidence that Mr. Chapman made any attempt to do so.

### ii. Petitioner Has Not Shown Cause to Excuse Administrative Exhaustion

To overcome his failure to exhaust his administrative remedies, Mr. Chapman "must show cause and prejudice for [his] failure to exhaust." *Engle*, 26 F. App'x at 396. Petitioner

16

argues that his failure should be excused because facility staff did not respond to his attempts at informal resolution and Associate Warden Ramos told him he could "just move forward with [his] issues" when he did not receive a reply from facility staff regarding informal resolution.[6] (ECF Doc. 9, p. 1.)  Mr. Chapman also asserts in his Petition that he filed a Sensitive BP–11, alleging that staff had destroyed or failed to process his BP–8s.  (ECF Doc. pp. 9, 12, 15.)  In essence, Mr. Chapman argues that his failure to exhaust his administrative remedies should be excused because his attempts to exhaust his remedies were impeded by the misconduct of institution staff and/or because he was told that he could bypass the informal process.

Beginning with Petitioner's allegation that staff misconduct impeded the exhaustion of his remedies, the Sixth Circuit has explained that "an intentional decision not to exhaust procedural remedies generally does not constitute cause, [but] official interference making compliance impracticable will." *Engle*, 26 F. App'x at 396 (citing *Amadeo v. Zant,* 486 U.S. 214, 221-22 (1988)).  Here, there is some evidence to suggest that actions (or inaction) by facility staff impacted Mr. Chapman's ability to seek administrative relief at the initial, informal stage of administrative review.  For example, records suggest that Mr. Chapman supplied three BP-8 forms to Mr. Zackasee on April 22, 2025, then emailed the Warden to seek assistance thirteen days later when no action had yet been taken to address the forms, and finally waited another four days before filing his BP-9 appeals "at the specific request of the Warden and Associate Warden."  (ECF Doc. 9-2, pp. 1, 2; ECF Doc. 1-3, pp. 6, 13, 19.)  But the records do not end there.  After the BP-9 forms were submitted, Mr. Chapman was repeatedly instructed, at three different levels of review, that he must provide further information and/or corrected BP-9

---

[6] Although Mr. Chapman states in his reply that the Associate Warden told him he could move forward (ECF Doc. 9, p. 1), he asserted in his BP–9s that he spoke with both the Associate Warden and the Warden and was moving forward at their request (ECF Doc. 1-3, pp. 6, 13, 19).

forms *to the Warden* before he could progress to any further level of administrative review. (ECF Doc. 1-4. pp. 1-5; ECF Doc. 8-4, pp. 2-6.)  Rather than follow those repeated instructions, Mr. Chapman elevated his appeals to the next level of review while asserting generally that documentation was "not available."  (*See, e.g.,* ECF Doc. 1-3, pp. 3, 9, 15.)  Given Mr. Chapman's apparent failure to comply, or even to attempt compliance, with the instructions repeated in each of his rejection notices, the undersigned concludes that Mr. Chapman's failure to exhaust his administrative remedies was the result of "an intentional decision not to exhaust" rather than "official interference making compliance impractical."  *Engle*, 26 F. App'x at 396. Accordingly, Mr. Chapman has not shown that "official interference" warranted a finding of "cause" sufficient to excuse the default resulting from his failure to exhaust his remedies.

Turning to the allegation that Mr. Chapman was told he could bypass the informal resolution process, the Code of Federal Regulations does provide that "[a]n informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution."  28 C.F.R. § 542.13(b).  Mr. Chapman asserts in his reply memorandum that Associate Warden Ramos told him he could "just move forward with [his] issues" given staff delays in acting on his BP-8 forms (ECF Doc. 9, p. 1), and his BP-9 forms assert that he filed the forms at "the specific request of the Warden and Associate Warden" because of the "undue delay" in processing the BP-8 requests (ECF Doc. 1-3, pp. 6, 13, 19).  But these self-serving, unsworn statements are the only evidence suggesting that Mr. Chapman had permission to bypass the informal resolution process.  These assertions are outweighed by the repeated, written instructions given to Mr. Chapman at every level of administrative review that he must complete and/or provide further evidence relating to the BP-8 process and submit corrected BP-9

forms before progressing to any higher level of administrative review. (ECF Doc. 1-4. pp. 1-5; ECF Doc. 8-4, pp. 2-6.) This evidence does not support a finding that "the Warden or institution Administrative Remedy Coordinator[]" exercised their discretion to allow Mr. Chapman to bypass the informal resolution stage of the administrative process. 28 C.F.R. § 542.13(b). Thus, Mr. Chapman's alleged conversations with the Warden and/or Associate Warden do not establish cause to excuse his default in exhausting his administrative remedies.

For the reasons discussed above, the undersigned concludes that Mr. Chapman has failed to properly exhaust his administrative remedies, and has also failed to show "cause" sufficient to excuse his resulting procedural default. *See Woodford*, 548 U.S. at 90 ("[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).") (internal citation and quotations omitted) (emphasis removed). Moreover, the undersigned observes that Mr. Chapman's refusal to reengage with the institution, as instructed, to complete the initial phases of administrative review had the ultimate effect of precluding administrative findings on the merits of the Petition. This conflicts with the "two main purposes" for exhaustion, as articulated by the Supreme Court. *See Woodford*, 548 U.S. at 89. First, there is no protection for "administrative agency authority" when an agency does not have an opportunity to take a position on the merits of a dispute. *Id.* And second, the "efficiency" of both the agency and the judiciary suffers when the agency does not have an opportunity to address the merits of the dispute prior to litigation and the court consequently has no "useful record for subsequent judicial consideration." *Id.*

19

Accordingly, the undersigned recommends that the Court **GRANT** Respondent's motion to dismiss the Petition pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies.[7]

### IV.    Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DENY** Respondent's motion to dismiss the Petition pursuant to Rule 12(b)(1), **GRANT** Respondent's motion to dismiss the Petition pursuant to Rule 12(b)(6) (ECF Doc. 8), and **DISMISS** the Petition (ECF Doc. 1) without prejudice.


August 10, 2026

/s/ Amanda M. Knapp
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

---

[7] Because the undersigned recommends dismissal for failure to exhaust administrative remedies, the merits of Respondent's additional motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and alternative motion for summary judgment under Fed. R. Civ. P. 56 need not be addressed herein.